1   NOTMORGAN, LEWIS & BOCKIUS LLP
    REBECCA D. EISEN, State Bar No. 96129
2   SHANNON B. NAKABAYASHI, State Bar No. 215469
    REBECCA LICHT JENSEN, State Bar No. 267752
3   One Market, Spear Street Tower
    San Francisco, California  94105-1126
4   Telephone:  415.442.1000
    Facsimile:   415.442.1001
5   E-mail:   reisen@morganlewis.com
                  snakabayashi@morganlewis.com
6                 rjensen@morganlewis.com

7   JOHN S. BATTENFELD, SBN 119513
    MORGAN, LEWIS & BOCKIUS LLP
8   300 South Grand Avenue
    Twenty-Second Floor
9   Los Angeles, California  90071-3132
    Tel. 213.612.2500
10  Fax:  213.612.2501
    email: jbattenfeld@morganlewis.com

11

12  Attorneys for Defendant
    MAXIM HEALTHCARE SERVICES, INC.

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

17  BARBARA BUCKLAND,                    Case No. 2:11-CV-08414-JST-JEM
    individually, ANNA MARIE
18  STEWART, individually, CARMEN        **DEFENDANT MAXIM
    PETERS, individually, BRIAN          HEALTHCARE SERVICES, INC.'S
19  PIAZZA, individually, and on behalf  MEMORANDUM OF POINTS AND
    of other members of the general      AUTHORITIES IN OPPOSITION TO
20  public similarly situated,           PLAINTIFFS' MOTION FOR
                                         CONDITIONAL AND CLASS
21              Plaintiffs,              CERTIFICATION**

22              v.                       Date:        June 25, 2012
                                         Time:        10:00 a.m.
23  MAXIM HEALTHCARE                     Courtroom: 10-A
    SERVICES, INC., a Maryland           Judge:       Josephine Staton Tucker
24  corporation; and DOES 1 through
    100, inclusive,
25
                Defendants.
26

27

28

DB2/ 23195661

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND ............................................................................. 3

       A.    Maxim Healthcare's Business .............................................................. 3

       B.    Maxim's External Time and Payroll Practices ..................................... 4

             1.    Maxim's National and California Policies ................................. 4

             2.    Each Local Office Sets Individual Pay Rates for
                   Assignments ............................................................................... 5

             3.    Employees Are Paid for All Hours Worked ............................... 6

       C.    The Nurse Plaintiffs ............................................................................. 7

             1.    Barbara Buckland ...................................................................... 7

             2.    Carmen Peters ........................................................................... 7

             3.    Plaintiff Anna Marie Stewart ..................................................... 9

III.   ARGUMENT ..................................................................................................... 9

       A.    All Recruiter Claims Are Covered by a First-Filed Action ................. 9

       B.    Barbara Buckland's Claims Must Be Excluded ................................. 10

       C.    The Court Should Deny Conditional Certification Because
             Plaintiffs Fail to Establish They are "Similarly Situated" ................. 11

             1.    Plaintiffs Present No Evidence of an Institution-Wide
                   Practice .................................................................................... 13

             2.    Plaintiffs Submit No Evidence of Other Potential Opt-Ins. ..... 17

             3.    Plaintiffs Fail to Identify Common Evidence .......................... 18

       D.    The Court Should Deny Class Certification ....................................... 18

             1.    The Requirements For Class Certification Are Demanding .... 18

       E.    Plaintiffs Cannot Satisfy The Requirements Of Rule 23(a) .............. 19

             1.    Plaintiffs Cannot Establish The Commonality
                   Requirement ............................................................................. 19

             2.    Plaintiffs Fail To Establish Typicality .................................... 20

             3.    Plaintiffs' Counsel are Inadequate Representatives ................ 21

DB2/ 23195661

i

Case No. 2:11-CV-08414-JST-JEM

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

**TABLE OF CONTENTS**
(continued)

**Page**

F.   Plaintiffs Cannot Satisfy The Requirements Of Rule 23(b)(3) .......... 22

    1.   Plaintiffs Cannot Establish The Predominance Requirement ................................................................................ 22

        a.   Plaintiffs' Wage Claims Depends On Individual Issues ...................................................................... 22

        b.   Each of Plaintiffs' Derivative Penalty Claims Also Depend On Individual Issues ......................................... 24

    2.   Plaintiffs Cannot Establish Superiority Or Manageability Requirements of Rule 23(b)(3) .................................. 24

IV.   CONCLUSION ................................................................................ 25

DB2/ 23195661.2

ii

Case No. 2:11-CV-08414-JST-JEM

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Inter-Con Sec. Sys., Inc.,*
242 F.R.D. 530 (N.D. Cal. 2007) ........................................................................ 11

*Alltrade, Inc. v. Uniweld Products, Inc.,*
946 F.2d 622 (9th Cir. 1991) .............................................................................. 10

*Amchem Products, Inc. v. Windsor,*
521 US 591, 117 S.Ct. 2231 (1997) .................................................................... 21

*Bishop v. Petro Chemical Transport LLC,*
582 F. Supp. 2d 1290 (E.D. Cal. 2008) .............................................................. 19

*Bonilla v. Las Vegas Cigar Co.,*
61 F. Supp. 2d 1129 (D. Nev. 1999) ................................................................... 17

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) ................................................................................ 24

*Colson v. Avnet, Inc.,*
687 F. Supp. 2d 914 (D. Ariz. 2010) ............................................................ 11, 18

*Cucci v. Edwards,*
510 F. Supp. 2d 479 (C.D. Cal. 2007) ............................................................ 1, 25

*Cullen v. New York State Civil Service Commission,*
566 F.2d 846 (2d Cir. 1977) ............................................................................... 21

*Eddings v. Health Net Inc.,*
Case No. CV 10–1744–JST ........................................................................... 17, 20

*Edwards v. City of Long Beach,*
467 F.Supp.2d 986 (C.D. Cal. 2006) .................................................................. 25

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) ........................................................................ 18, 19, 20, 21

*Hadjavi v. CVS Pharmacy, Inc.,*
2011 WL 3240763 ............................................................................................... 23

iii

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hesse v. Sprint Corp.*
    598 F3d 581 (9th Cir. 2010) .................................................................. 22

*Hinojos v. Home Depot, Inc.,*
    2006 WL 3712944 (D.Nev. 2006)........................................................... 18

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
    571 F.3d 953 (9th Cir. 2009) ................................................................. 22

*Jasper v. C.R. England, Inc.,*
    2009 WL 873360 (C.D. Cal. Mar. 30, 2009) ...................................... 24

*Jimenez v. Domino's Pizza, Inc.,*
    238 F.R.D. 241 (C.D. Cal. 2006) .......................................................... 20

*Leuthold v. Destination America, Inc.,*
    224 F.R.D 462 (N.D. Cal. 2004) ........................................................... 25

*Maurice McCullough v. Office Depot, Inc.,*
    C.D. Case No. CV 10-4986 GHK, ......................................................... 1

*Mixon v. Gray Drug Stores, Inc.,*
    81 F.R.D. 413 (N.D. Ohio 1978).......................................................... 10

*Pfohl v. Farmers Ins. Group,*
    2004 WL 554834 (C.D. Cal. Mar. 1, 2004) ........................................ 11

*Rutledge v. Electric Hose & Rubber Co.,*
    511 F.2d 668 (9th Cir.1975) .................................................................. 18

*Sarviss v. Gen. Dynamics Info. Tech., Inc.,*
    663 F. Supp. 2d 883 (C.D. Cal. 2009)...............................11, 12, 13, 20

*Schwartz v. Upper Deck Co.,*
    183 F.R.D. 672 (S.D.Cal.1999)............................................................. 20

*Tracy v. Dean Witter Reynolds, Inc.,*
    185 F.R.D. 303 (D. Colo. 1998).................................................... 13, 14

*Trautz v. Weisman,*
    846 F.Supp. 1160 (S.D.N.Y. 1994) ...................................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Trinh v. JP Morgan Chase & Co.*,
   2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ........................................12, 13, 17

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ...............................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. ___, 131 S. Ct. 2541, 180 L.Ed. 2d 374 (2011) .................2, 18, 19, 24

*Washington v. Joe's Crab Shack*,
   271 F.R.D. 629 (N.D. Cal. 2010) ........................................................................20

*White v. Osmose, Inc.*,
   204 F.Supp.2d 1309 (M.D. Ala. 2002)................................................................22

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ..............................................................18, 19, 24

**STATUTES**

28 U.S.C. § 1367(a) ...................................................................................................25

29 U.S.C.
   § 216(b)........................................................................................................11, 17, 25
   § 255 .....................................................................................................................16,17

Cal. Code Regs. Tit. 8 § 13520....................................................................................24

Cal. Lab. Code
   § 203 .....................................................................................................................24
   § 221 .....................................................................................................................16
   § 226 .................................................................................................................16, 24

**OTHER AUTHORITIES**

Fed. R. Civ. P.
   23 ............................................................................2, 10, 18, 19, 20, 25
   25(a)...........................................................................................................11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Cent. Dist. L.R. 7-3 .................................................................................................. 1

Case No. 2:11-CV-08414-JST-JEM

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

I.    **INTRODUCTION**[1]

Plaintiffs' Motion for Conditional and Class Certification should be denied. Plaintiffs attempt to certify a carbon-copy California "Recruiter" class action when such an action – *encompassing every putative class member whom Plaintiff Brian Piazza seeks to represent* – is already pending and awaiting a class settlement approval hearing. It is thus improper, and should be rejected outright. *See Ruiz-Stupi, et al. v. Maxim Healthcare Services, Inc.,* 4:12-cv-01594 (S.D. Texas) ("*Ruiz-Stupi*"). Indeed, as this Court is aware, class certification was fully briefed and argued months ago in *Ruiz-Stupi,* but a ruling was stayed and the case was subsequently transferred to the Southern District of Texas for settlement proceedings. *See Ruiz-Stupi* Docket Nos. 61-65, 73-78, 87-93.

The Nurse Plaintiffs' Motion is equally deficient. Plaintiffs fail to offer *any proof,* let alone "significant proof" that a class or collective action is appropriate. The named Plaintiffs, who seek to be appointed class representatives, <u>have not even bothered to submit declarations on their own behalf.</u> The evidentiary support for the Nurse Plaintiffs' motion is a mere few pages of deposition testimony and a selection of largely unauthenticated wage statements – all of which show that Plaintiffs are NOT similarly situated (even to each other) and no common proof of the claimed wage-hour violations exists. Plaintiffs seek to conditionally certify a collective *nationwide class of tens of thousands of current and former employees* and certify an overbroad class of California nurses based entirely on random

---

[1] Central District Local Rule 7-3 requires a party contemplating filing any motion to first meet and confer with opposing counsel to discuss *thoroughly* the substance of the contemplated motion and any potential resolution. *Cucci v. Edwards*, 510 F. Supp. 2d 479, 486 (C.D. Cal. 2007) ("Plaintiff did not attempt to contact Defendants prior to filing this motion. . . . Thus, the Court may deny Plaintiff's motion on this basis alone."). *See also Maurice McCullough v. Office Depot, Inc.,* C.D. Case No. CV 10-4986 GHK (JEMx), Dkt. No. 98, Order to Show Cause (threatening to strike class allegations, in part, because Plaintiffs failed to comply with L. R. 7-3). Plaintiffs failed to meet and confer prior to filing their Motion or meet any of the requirements of Local Rule 7-3. Nakabayashi Decl. ¶9. Plaintiffs' disregard is grounds, on its own, for denial of their class certification motion.

DB2/ 23195661
MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE
1
Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

anecdotal evidence, limited to the three California Plaintiffs, that does not even support the propositions for which it is introduced.

The Nurse Plaintiffs baselessly conclude that Maxim had a "consistent pattern of underpayment of overtime wages caused by Maxim's nationwide payroll software system," Mtn. 12:1-3, and had "a uniform plan or scheme to avoid liability by imposing an artificial regular rate of pay on those working overtime hours," Mtn. 12:3-11, but provide no evidence of any such "uniform" plan or policy. Plaintiffs do not attach any evidence or testimony regarding Maxim's payroll or overtime policies, other than selections from a deposition in another case which merely verifies that Maxim has a national payroll department.

By contrast, Maxim submits indisputable evidence, including the Plaintiffs' own testimony, that Maxim's "uniform" policy is to pay its nurses all overtime owed and to make only appropriate adjustments to their pay. Moreover, while Maxim has a national payroll department, as Plaintiffs themselves testify, its role is to process the hours and wages input from the local branch offices. Pay rates are determined on a local level and are influenced by individual factors, including negotiations between the nurse and the recruiter. Further, as Piazza states in his declaration, all corrections of any pay errors are handled at the local branch office. Finally, an examination of Plaintiffs' submitted wage statements demonstrates that, despite their allegations to the contrary, Plaintiffs were paid correctly. *See* Declaration of Jennifer Redding, ¶¶ 8-11.

Given these facts, Plaintiffs have no evidentiary support for their assertion that there have been *nationwide or statewide systemic* overtime violations caused by Maxim's payroll system. They cannot even demonstrate these alleged systemic violations in their own pay statements. Plaintiffs do not satisfy the standard to send FLSA notice and they also fail to meet the much stricter standards for Rule 23 certification under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541, 180 L.Ed. 2d 374 (2011). Accordingly, Plaintiffs' Motion should be denied.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

## II.   FACTUAL BACKGROUND

### A.   Maxim Healthcare's Business

Maxim provides recruiting and staffing services to a variety of clients in the healthcare industry.  *See* Goad Decl., ¶ 2.[2]  Maxim has two divisions – Homecare and Staffing.  It has approximately 61 offices currently in California, the majority in the Homecare Division.  *Id.,* ¶ 3.   The Homecare Division provides nurses and other skilled and unskilled healthcare workers to patients in homes and to corporate wellness programs.  *Id.,* ¶4.  For example, Homecare places LVNs/LPNs in homes to care for sick, dying, and disabled patients (including adults, seniors, children, and infants). *Id.* Maxim Staffing, by contrast, places various kinds of healthcare professionals and administrative personnel in various facilities such as hospitals, nursing homes, clinics, schools, and correctional facilities.  *Id.* ¶ 5.

Maxim generally refers to its employees as either "internal" employees – *e.g*., Recruiters, Account Managers and other internal office staff who work out of Maxim's offices – or "external" employees – nurses and other health care workers who report on an assignment-by-assignment basis to patients' homes or facilities.  Goad Decl. at ¶ 6.  Each branch office generally has one Account Manager (or in some cases two) who is responsible for the overall operation and performance of the branch office.  Each office also has several Recruiters.  *Id.* Some offices are also staffed with Directors of Clinical Services, Clinical Supervisors, and/or Personnel Coordinators.  *Id.*  The staffing needs of offices vary.  *Id.*  LVNs, LPNs[3] and other home health care employees are typically assigned to one of the branch offices.  *Id.*

---

[2] All evidence filed in support of Defendant's Opposition is attached to Defendant's Index to Evidence.  All declarations are cited as "[declarant last name] ¶ __."  All testimony is cited as "[deponent's last name] Depo. [page number]:[line numbers]."
[3] These acronyms stand for "Licensed Vocational Nurse" and "Licensed Practical Nurse," respectively.  LVN is a license given out in California and Texas only. Other states refer to this position as LPN. *See e.g.* Peters Depo. 108:15-110:9.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

3                   Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

**B.**   **Maxim's External Time and Payroll Practices**[4]

**1.**   **Maxim's National and California Policies**

Maxim's Employee Handbook for External Employees (such as the Nurse Plaintiffs) states:

> It is our policy and practice to compensate employees accurately and in compliance with all applicable state and federal laws.  To ensure that you are paid properly for all time worked, you must accurately report all work time and review your paycheck promptly to identify any errors.  Please immediately review your pay stub when you receive it to make sure it is correct.  If you believe such a mistake has occurred, please notify your immediate Manager and The Company will research the situation and will promptly make any necessary corrections.

Redding Decl. ¶3, Exh. A, MAX000092.  Employees are paid weekly, each Friday, for all hours worked during the preceding week.  *Id.*  Maxim's payroll week runs from Sunday at 7:00 a.m. until the following Sunday at 6:59 a.m.  *Id.*

Maxim's policy further states that "[o]vertime is paid in accordance with all applicable federal, state and local laws and regulations."  Redding Decl. ¶3, Exh. A, MAX000094.  Similarly, "[a]ll payroll deductions will be made in accordance with applicable federal, state and local laws and regulations."  *Id.* at MAX000094.

Maxim has a procedure for employees to submit complaints or issues regarding their pay:  "The Company makes every effort to ensure that employees receive the correct amount of pay and that employees are paid promptly on payday. In the unlikely event there is an error in an employee's pay, he/she should immediately contact his/her Company representative."  Redding Decl. ¶3, Exh. A, MAX000094.

---

[4] Maxim's policies and procedures for internal employees (*i.e.* Recruiters) were described in detail in Maxim's *Ruiz-Stupi* briefing.  *See Ruiz-Stupi* Dkt. Nos. 73-78.

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

4                          Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

California employees are provided with a "California Local Supplement." The California Supplement has a separate section relating to overtime. Like the national handbook, it emphasizes: "**[A]ll hours worked must be paid**." Redding Decl. ¶3, Exh. B, MAX000211. Specific to California, it states that non-exempt employees receive daily as well as weekly overtime premium pay. *Id.* at MAX00211. Given the unique nature of Maxim's business, the handbook explains that pay rates are highly individualized: "Since we contract individually with each of our client facilities, your pay rate may be subject to change depending upon the specific work assignment and the client facility … You may decline any shift or assignment if the pay rate is not acceptable to you." Redding Decl. ¶3, Exh. A, at MAX000093. In short, Maxim's published, established uniform policies are fully compliant with applicable federal and California law.

### 2.   Each Local Office Sets Individual Pay Rates for Assignments

Every nursing assignment is different. Goad Decl. ¶8; Peters Depo. 372:15-373:18 (each home care patient and assignment was different). When a patient needs a nurse, Maxim Recruiters locate the best possible available candidate to fill the needs of the assignment. Goad Decl. ¶8. Nurses are free to accept or decline any assignment for any reason, including the pay rates offered. Redding Decl. ¶3, Exh. A, MAX000093; Peters Depo. 376:9-11 ("Q. Did you ever turn down an assignment that was offered to you? A. Yes, yes."); Stewart Depo. 294:2-4. Nurses also negotiate their pay rates. Goad Decl. ¶ 9; Stewart Depo. 110:9-17.

The pay rates for each assignment are determined by the local office. Goad Decl.¶9; Redding Decl.¶5; Peters Depo. 345: 9-12 ("Q. You received different rates of pay depending on the job you were assigned to, right? A. Yes."); Stewart Depo. 293:9-16. Rates vary depending on various factors, including: the particular division (staffing or homecare); the type of facility assigned (for staffing assignments); the skill and training of the employee; the acuity of the patient; the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   type of work involved in the assignment; and Maxim's contract with the patient or

2   his or her insurance company.  Goad Decl. ¶7.  *See also* Peters Depo. 88:20-89:3

3   ("[I]t really relied a lot on the contract.  It may be your skill level; it may be your

4   level of experience that would affect your pay."); Stewart Depo. 167:10-13.  Within

5   the range affected by these factors, Recruiters and the office's Account Manager

6   have the discretion to negotiate with external employees to determine the specific

7   pay rate for each assignment.  Goad Decl. ¶9.  *See also* Peters Depo. 377:1-16.

8               **3.     Employees Are Paid for All Hours Worked**

9         Because external employees work away from the branch offices, they are

10  responsible for accurately tracking and submitting their own time.  Redding Decl.

11  ¶3, Exh. B, MAX000211; Stewart Depo. 268:18-20; 271:14-22; Peters Depo. 176:

12  21-177:18.  Homecare employees record their hours on "nursing notes," "flow

13  sheets" or time logs.  Peters Depo. 29:13-20; Stewart Depo. 41:10-15. Staffing

14  employees may use the time cards or time-keeping software provided by the facility

15  where they are assigned.  Peters Depo. 28:17-30:3.

16        The Recruiter or other appropriate internal personnel reviews each individual

17  time record for accuracy or discrepancies with the employee's scheduled

18  assignments.  Goad Decl. ¶11; Redding Decl. ¶4; Piazza Decl. ¶4c.  If any

19  inconsistencies occur, the Recruiter will contact the employee to investigate and

20  make sure that the external employee is properly paid for all hours worked.  *Id.*  At

21  least once a week, the local branch office verifies the employees' time, including

22  overtime hours worked, and the specific rate for each employee's assignments.

23  Goad Decl. ¶11; Redding Decl. ¶4.

24        Different offices use different software to enter and track employees' hours

25  depending on location and type of branch.  Redding Decl. ¶4.  The branches then

26  send an electronic file with the payroll information to Maxim's corporate office in

27  Maryland.  *Id.*  Maxim extracts the data from those files, puts it into Maxim's

28  payroll system, audits for any issues, and makes any necessary additional edits or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1  corrections. *Id.* A corporate payroll employee reviews employees' pay records to

2  determine whether the branch employees properly entered the employee's pay and

3  overtime for each shift. *Id.* at ¶6. Payroll then sends the electronic data to Maxim's

4  payroll vendor, ADP, to perform the gross-to net payroll calculation and to produce

5  the employees' individual checks. *Id.* at ¶4.

6      In the event that errors are not detected or corrected before weekly payroll is

7  completed, the error is corrected in subsequent payroll. The correction of any

8  underpayment or overpayment to an employee is identified as an "adjustment" on

9  the employee's pay statement. Redding Decl. ¶6; Goad Decl. ¶12.

10  **C.    The Nurse Plaintiffs**

11      **1.    Barbara Buckland**

12      Buckland, now deceased, worked for Maxim's Palm Desert, California office

13  from 2005 to 2008, as an LVN. Mtn. 2:18-19. As Plaintiffs themselves previously

14  informed the Court, Buckland is the only Plaintiff with an alleged claim that Maxim

15  reduced her hourly rates in order to avoid paying overtime. *Buckland,* Dkt No. 62,

16  page 8. Buckland is also the only Plaintiff who claims that Maxim made improper

17  deductions from her pay statements for overtime allegedly owed. *See id;* Mtn.5:12.

18      Although Plaintiffs request that Buckland be appointed a class representative,

19  Buckland died August 24, 2011 and no party has been substituted to represent her

20  interests. The time to do so has come and gone. (*See* discussion below.) Maxim

21  had no opportunity to depose Buckland prior to her death or otherwise conduct

22  more specific discovery regarding the basis for her claims. Nakabayashi Decl.¶8.

23      **2.    Carmen Peters**

24      Peters is an LVN who worked for Maxim in California from 2007 to 2010.

25  Mtn 3:1-2; Peters Depo. 17:4-6; 138:15-17. Peters had a wide variety of

26  assignments for Maxim, both in staffing and home health. *Id.* at 28:17-24; 368:11-

27  13. She worked in hospitals, nursing homes, two state prisons and at least two

28  public schools. Peters also worked in the homes of approximately half a dozen

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1   patients – primarily while assigned to Maxim's San Jose, California office. *Id.* at

2   372:15-373:3.  Peters testified that the work and the working conditions in each

3   assignment were different as was her pay rate.  *Id.* at 345: 9-12; 372:15-373:18.

4   She rarely worked overtime in homecare – and could only recall doing so on a few

5   occasions.  *Id.* 113:18-114:3.  Peters generally reviewed her paychecks and reported

6   any errors she saw.  *Id.* at 177:8-18.  Peters testified she could not recall any

7   specific instances where she brought an error to a recruiter's attention and the

8   recruiter failed to correct it. *Id.* at 184:2-11.

9        Peters was fired or DNR'd ("do not return") from several assignments

10  because of her poor attitude and mismanagement of patient medication.  Peters

11  Depo. 131:12-17; 349:9-14, Exh. 26 (MAX000165-68).  As a result of being

12  DNR'd, Peters was not given any further assignments for Maxim after April 2010.

13  *Id.* at 17:4-6; 51:15-18; 349:9-14.

14       Peters testified that her claims arise from her dealings with one Maxim office

15  – San Jose – and with one particular recruiter.  Peters Depo. 63:9-11; 85:3-4 ("That

16  is where most of the problems occurred – out of the San Jose office."); 106:25-

17  107:3.  She makes no claim that her wage rates were determined depending on the

18  length of her shift and/or whether or not she was required to work overtime.  *Id.* at

19  88:13-19 (Q. "[D]id you ever notice whether the hourly pay rate was tied in any

20  way to how long the shift was that you were scheduled to work? … A. Not to my

21  knowledge."); 65:11-14.  She can think of only one time when she did not get paid

22  correctly for overtime and that was an issue where she felt the San Jose recruiter

23  didn't submit all of her overtime.  *Id.* at 83:15-85:16 ("Q. Who was it that you

24  talked to about whether or not you were entitled to that overtime? A. My recruiter...

25  In San Jose, yeah….Q. That's the only deduction that you know of…?  A. Yes.");

26  220:10-13.  According to Plaintiffs' Motion, Peters' only claim is that Maxim failed

27  properly to calculate her overtime on four occasions when she worked multiple

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8                                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1   assignments in the same week.  Mtn. 4:10-22.  The evidence upon which she relies

2   does not support this claim.  Redding Decl., ¶ 8.

3           **3.      Plaintiff Anna Marie Stewart**

4           Stewart, an LVN, worked for Maxim from 2006 to October 2009 as a home

5   care nurse out of the same Palm Desert office as Buckland.  Stewart Depo. 92:23-

6   25; 333:22-25.  In fact, Stewart and Buckland worked different shifts for the same

7   patients.  *Id.* at 111:25-112:16.  During that time, Stewart was assigned to

8   approximately half a dozen pediatric patients.  *Id.* at 24: 15-23.  Each assignment

9   was offered to Stewart separately and lasted a month or more at a time.  *Id.* at

10  110:2-22; 156:20-157:17.  Stewart stopped working for Maxim in August 2009.

11          Stewart testified that she did not recall *any* improper deductions.  *Id.* at

12  274:14-16.  Stewart's sole claim was that her recruiter promised her $17 an hour for

13  one assignment with a patient named "Isaiah" and she was later told either by her

14  recruiter or office manager that the rate was actually $14.57.  *Id.* at 182:6-13.

15  Stewart acknowledges she was paid overtime at time and a half for that assignment.

16  *Id.* at 187: 14-23.  Her complaint is that she wasn't paid at the higher rate.  *Id.* at

17  66:13-24.  Stewart acknowledges that with other patients she was paid a regular rate

18  of $17 and all overtime owed.  *Id.* at 159:14-25; 173:24-174:11.  Stewart didn't

19  recall <u>any</u> errors on her paychecks.  *Id.* at 273:8-11.  Certain adjustments were made

20  to her pay to correct errors reported by two Recruiters at the Palm Desert office.

21  Redding Decl., ¶ 11.

22  **III.   ARGUMENT**

23          **A.      All Recruiter Claims Are Covered by a First-Filed Action**

24          As the Court is aware, on April 5, 2010, a putative class action was filed

25  against Maxim in Orange County Superior Court (and then removed to this Court)

26  on behalf of <u>all current and former Maxim recruiters who worked in California at</u>

27  <u>any time from April 5, 2006 to the present</u>.  *See Ruiz-Stupi,* First Amended

28  Complaint ¶17, Dkt. No. 1, Exh. 2.  Ruiz-Stupi claims that Maxim misclassified

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                                      Case No. 2:11-CV-08414-JST-JEM

1   him and all California Recruiters as exempt from the pertinent provisions of the

2   California Labor Code and Wage Order(s).  Plaintiffs' Motions for Class and

3   Conditional Certification were filed on November 7, 2011.  Dkt. No. 57.  After the

4   both sides fully briefed certification, oral argument was held on February 27, 2012.

5   *See Ruiz-Stupi* Docket Nos. 61-65, 73-78, 87-93.

6       The class claims alleged by Piazza in his subsequently-filed action include

7   the same alleged class misclassification claims as those asserted, briefed and argued

8   in *Ruiz-Stupi*.[5]  A ruling in *Ruiz-Stupi* has been stayed and the case has now been

9   transferred to the Southern District of Texas (*see* Docket No. 109) where that court

10  will soon consider a proposed settlement of all nationwide and California class

11  Recruiter claims, covering the copy-cat claims made by Piazza.  Taber Decl. ¶¶2-6.

12  Indeed, Piazza's certification brief and evidence largely copy the work done by the

13  *Ruiz-Stupi* Plaintiffs.  In these circumstances, this Court should not rule on Piazza's

14  second-filed motion but rather should allow the settlement proceedings (which will

15  include certification of a California Recruiter class for settlement purposes) to

16  occur.  This case is a textbook example of why the "first to file rule" exists – to

17  avoid needless duplication of efforts and waste of judicial resources.  *See Alltrade,*

18  *Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625 (9th Cir. 1991)(the rule "serves

19  the purpose of promoting efficiency well and should not be disregarded lightly.")

20      In the event that the Court is inclined to consider Piazza's copy-cat class

21  certification arguments, Maxim hereby incorporates and refers the Court to its

22  briefs and evidence filed in Opposition to Ruiz-Stupi's Motions for Conditional

23  Certification and Class Certification.  *See* Docket Nos. 73-80.

## B.    Barbara Buckland's Claims Must Be Excluded

25      A deceased person is not a proper representative plaintiff and cannot satisfy

26  the requirements of Rule 23, especially Rule 23(a)(4)'s adequacy requirement.

27

28  _____

[5] In fact, Piazza's declaration in support of class certification is an almost *verbatim* copy of Ruiz-Stupi's declaration filed in November 2011.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10                           Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1  *Trautz v. Weisman*, 846 F.Supp. 1160, 1162 (S.D.N.Y. 1994)(a deceased person is

2  "incapable of satisfying the adequacy of representation requirements"); *Mixon v.*

3  *Gray Drug Stores, Inc.*, 81 F.R.D. 413, 414 (N.D. Ohio 1978) (denying class

4  certification on adequacy grounds because named representative died).  Further,

5  FRCP 25(a) provides that "if a party dies and the claim is not extinguished… [and a

6  motion for substitution] is not made within 90 days after service of a statement

7  noting the death, <u>the action by or against the decedent must be dismissed</u>."

8          Buckland died on August 24, 2011.  Maxim filed a Notice of Death with the

9  Court on December 22, 2011.  *See* Dkt. No. 49.  More than 90 days have passed

10  and Plaintiffs have not substituted anyone to represent Buckland's interests. By

11  now her claims should have been dismissed.  Moreover, Buckland is, by definition,

12  incapable of representing the interests of the putative Nurse Class.  Her request to

13  serve as a class representative should be denied.

14      **C.     <u>The Court Should Deny Conditional Certification Because</u>
        <u>Plaintiffs Fail to Establish They are "Similarly Situated"</u>**[6]

15          The Nurse Plaintiffs bear the burden of showing that potential opt-ins are

16  "similarly situated" within the meaning of Section 216(b) of the FLSA.  *Adams v.*

17  *Inter-Con Sec. Sys., Inc.,* 242 F.R.D. 530, 535-36 (N.D. Cal. 2007).  The Ninth

18  Circuit generally follows a two-step approach for making a collective action

19  determination.  *Colson v. Avnet, Inc*., 687 F. Supp. 2d 914, 925 (D. Ariz. 2010).  In

20  the first step – typically at the outset of the case – courts evaluate whether

21  conditional certification is warranted for the purpose of facilitating notice to

22  potential opt-ins.  *See Sarviss v. Gen. Dynamics Info. Tech., Inc.,* 663 F. Supp. 2d

23  883, 903 (C.D. Cal. 2009).  However, if notice is sought "after discovery is largely

24  complete," courts apply a more rigorous analysis.  *Pfohl v. Farmers Ins. Group,*

25  2004 WL 554834, at *2-3 (C.D. Cal. Mar. 1, 2004).

26

27  _____
[6] Maxim's Objections to Plaintiffs' Proposed FLSA Notice and Consent Form,
28  <u>including Maxim's opposition to tolling the statute of limitations during the notice
period,</u> is filed concurrently with this Opposition.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                        Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1    While courts are generally reluctant to apply the more rigorous standard until

2    classwide discovery is complete, some courts have also expressed reluctance to use

3    the lenient standard where the case has been pending for some time and the lack of

4    discovery is the fault of the party seeking certification. *See Sarviss,* 663 F. Supp.

5    2d at 904 (noting the plaintiffs' failure to conduct class discovery after the case had

6    been pending for over a year gave the court "pause").

7    Even assuming the first step test applies despite Plaintiffs' lack of diligence

8    (Nakabayashi Decl. ¶7), "applying the two-tiered analysis does not exempt

9    [Plaintiff] from putting forth some evidence that there are other individuals who

10   may be or have been similarly situated." *Sarviss,* 663 F. Supp. 2d at 904.  Further,

11   "lack of any evidence of similarity or even other potential class members precludes

12   class certification." *Id.* at 903 (denying conditional certification because Plaintiffs'

13   only evidence was his own affidavit).  "Aside from his own declaration, Plaintiff

14   has provided no additional evidence to support his claim that he is similarly situated

15   … and the allegations in his Complaint are vague enough that they could be

16   considered 'substantial' only on a particularly generous reading." *Id.* at 905.  *See*

17   *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, at *3-4 (S.D. Cal. Apr. 22,

18   2008) (plaintiffs failed to meet burden to conditionally certify FLSA class where

19   plaintiffs simply stated that they and members of putative class had essentially the

20   same job description and training and were compensated in the same manner and

21   provided argument comprising of boilerplate and legal conclusions).

22   Thus, Plaintiffs must make "substantial allegations" that are "supported by

23   <u>affidavits</u> which successfully engage a defendant's affidavits to the contrary." *Trinh,*

24   2008 WL 1860161 at *3 (emphasis added).  This requires: (1) evidence of an

25   institution-wide unlawful policy or practice (2) similarities among potential opt-ins

26   and (3) the opt-ins' reliance on common evidence.  *Id.*  Plaintiffs have failed to

27   establish any of these requirements.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                          Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

## 1.  Plaintiffs Present No Evidence of an Unlawful Policy

In support of their FLSA/failure to pay overtime claim, Plaintiffs allege that:

> When nurses worked more than one assignment in a day, or more than one assignment in a week, the payroll system does not total the hours between the two … for overtime purposes.  Maxim implemented a uniform plan or scheme to avoid overtime liability by imposing an artificial regular rate of pay on those working overtime hours, making lump sum deductions to wages the amount of overtime premiums earned in the pay period, and making non-itemized deductions from wages in a manner that made it impossible for nurses to be able to tell when or why certain deductions were being assessed.

Mtn 12:3-11.  These allegations are not supported by any evidence, let alone substantial evidence.  Plaintiffs rely on a small random selection of their own wage statements – documents which are for the most part, inadmissible (*see* Objections to Evidence) and which do not even support Plaintiffs' individual claims and say *nothing* about Maxim's corporate policies.  *See* Redding Decl. ¶¶7-11.  Indeed, Plaintiffs' own individualized evidence shows the <u>absence</u> of any systemic or uniform basis for alleged FLSA violations.  *See* Piazza Decl. ¶¶4a.iv. and c ("the hourly rate[s were] determined by the Account Manager" and as a Recruiter, he was responsible for resolving payroll errors).

Plaintiffs also cite to the Declaration of David Franchak for the unremarkable proposition that Maxim has its corporate headquarters in Maryland that includes a payroll department.  *See* Mtn. 3:4-5.  Not surprisingly, no court has held that <u>the existence of a corporate payroll department</u> is evidence of an unlawful "decision, policy or plan."  In fact, cases demonstrate just the opposite.  *See e.g. Sarviss, Sarviss,* 663 F. Supp. 2d at 904; *Trinh, supra,* 2008 WL 1860161 at *3.  In *Tracy v. Dean Witter Reynolds, Inc.,* 185 F.R.D. 303 (D. Colo. 1998), the court held that where, as here, plaintiffs alleged only that a few individuals did not receive appropriate overtime pay:

Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

> that fact alone does not lead me to conclude that there must be some unlawful national policy out there somewhere.  Plaintiffs presented no evidence of any such national policy, and they presented no evidence from which I may conclude that their failure to receive overtime was prompted or caused, even in part, by … any national policy to deny overtime compensation. . . . [Certification will be denied] absent some causal link between a common and identifiable wrongful act on the part of [the employer] and the denial of overtime compensation ….

185 F.R.D. at 311.  Here, Plaintiffs also have no evidence of a "causal link" as to their highly individualized overtime claims.

(1)    Lump-Sum Deduction of Overtime – This claim is brought by *Plaintiff Buckland only*.  There are no allegations from the two living Plaintiffs that this ever happened to them.  A review of Buckland's (inadmissible) pay statements fails to demonstrate that any improper deductions ever occurred.  Buckland's pay statements do show "adjustments" for various amounts to correct errors reported by Palm Desert personnel.  Redding Decl. ¶10.  They do <u>not</u> show what she claims they show – i.e. that overtime was earned and then deducted.  Rather they show that Buckland's pay was adjusted on a few occasions and in small amounts, in order to correct prior overpayments to Buckland for hours she had not worked or had been paid at an incorrect rate (not overtime).  Redding Decl. ¶10.

(2)    Lowering of the Overtime Rate –*Plaintiffs cite only to Buckland's wage statements* as evidence of a supposed common policy of reducing an assignment rate when the assignment entailed overtime.  Although supposedly a common policy, Peters testified that this never happened to her.  Peters Depo. 88:13-19 ("Q…was the pay rate for an eight-hour shift different than the pay rate for a 16-hour shift? A. Not to my knowledge").  And Stewart only testified that on *one occasion*, one office manager or Recruiter in San Jose told her that she was going to be paid a lower rate on an assignment than she had been paid for prior assignments.  Stewart Depo. 182:6-183:11.  Stewart surmises, but offers no proof,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14                                Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

that the reason for the lower rate was the amount of overtime the assignment entailed. *Id.* Stewart admits, however, that she was paid overtime for that very assignment. *Id.* at 187:14-23. Moreover, rather than attesting to a systematic practice of reducing her rate whenever overtime was involved, Stewart testified that there were numerous instances where her rate was <u>not lowered</u> because of overtime; rather she was paid the same rate throughout her assignment, regardless of overtime. *Id.* at 159:14-25; 173:24-174:11.

Buckland's pay statements ultimately demonstrate nothing even as to her individual claims. They show no direct link between overtime worked and "adjustments" made. Without Buckland's testimony and the possibility of cross-examination, nothing – and certainly not a nationwide policy – can be inferred as to why her rate was changed "on the Brown case." Redding Decl.¶5; Goad Decl.¶9.

(3)     <u>Failure to Properly Calculate Overtime When Multiple Shifts Are Worked</u>– Plaintiffs present evidence from one Plaintiff only, Carmen Peters.

An examination of Peters' pay statements reveals that the issue she alleges was isolated and was corrected. She fails to mention that through subsequent adjustments, she was paid for the overtime in question. Redding Decl. ¶8.[7] The evidence also establishes that Peters worked for two different patients in one week on other occasions and <u>was</u> properly paid the overtime she worked that very week. Redding Decl. ¶¶8-9. Thus, even a "cursory" review of Peters' pay statements shows no evidence of any unlawful policy or practice, or of anything more than two errors caught and promptly corrected later.

The individualized nature of Peters' claims is further demonstrated by the fact that neither of the other Plaintiffs alleges any similar instances of underpayment. Further, Peters admitted that under Maxim's policies she could and

---

[7] Many of Peters' pay statements do not even stand for the proposition for which they are submitted. Some do not reflect *any* instance of Peters working two shifts on the same day. *See* Redding Decl. ¶8a (MAX000393). Others reflect that she did not work any overtime at all. *Id.* at ¶8c(MAX000367).

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

15                           Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1    did report errors in her pay to various recruiters, yet Peters could not recall any

2    specific instances where she brought an error to the attention of a recruiter and the

3    Recruiter failed to correct it.  *Id.* at1 117:4-118:19, 184:2-11.

4        (4)    <u>Non-Itemized Deductions</u> – This claim is raised on behalf of Plaintiff

5    Stewart only.[8]  It is improper for multiple reasons including that the underlying

6    claim is <u>not a viable FLSA claim</u>.  The FLSA does not contain any provisions

7    relating to wage deductions similar to California Labor Code §§ 221 and 226.

8    Further, Stewart never filed a consent to join the FLSA collective action and the

9    evidence she presents is from 2006 and 2007, *i.e.* outside the limitations period

10    even if she were to opt-in today.  *See* 29 U.S.C. §255(a).

11        Regardless, what Plaintiffs refer to as "deductions" are actually

12    "adjustments" to pay made pursuant to Maxim's procedure whereby pay errors

13    made in a prior week are reported by the local office and corrected in a subsequent

14    week.  The fact that Maxim endeavors to correct errors is certainly not evidence of

15    a systematic policy to violate the FLSA.  Indeed, a review of Stewart's submitted

16    pay statements shows both <u>positive</u> and negative adjustments to pay that were the

17    result of information provided by the local office.  Redding Decl. ¶11.

18        **2.    Plaintiffs Submit No Evidence of Other Potential Opt-Ins.**

19        Plaintiffs submit no affidavits in support of their collective claims.  **They do**

20    **not even submit affidavits to support their own claims.**  The few paystubs

21    submitted and the selected deposition testimony of Stewart shows that even

22    amongst the Plaintiffs, there are wide differences with regard to the types of claims

23    alleged and the basis for those claims.  *In short, if Plaintiffs are not even similarly*

24    *situated to each other – how can they be similarly situated to an entire nationwide*

25    *or California class?*

26

27

28

---

[8] Plaintiffs reference numerous wage statements in their Motion (p.5) that were not included in Plaintiffs' Evidence and should not be considered by the Court.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1    Notably, the only living person who filed the mandatory Notice to Join

2    Plaintiffs' collective action is Plaintiff Peters (who submitted an opt-in declaration

3    full of inaccuracies regarding her dates of employment (Peters Depo. 120:23-124:5,

4    Exh. 4 (MAX000051)).   Stewart never bothered to join the FLSA collective claim

5    and, as a result, not only can she not be a representative Plaintiff, her own FLSA

6    claims against Maxim are now time-barred.   *See e.g.* 29 U.S.C. §§ 216(b) & 255;

7    *Bonilla v. Las Vegas Cigar Co.,* 61 F. Supp. 2d 1129, 1132-33 (D. Nev. 1999).

8    Peters confirmed in her deposition that she has no knowledge of other nurses'

9    claims.   *See* Peters Depo. 369:9-14; 372:4-14; 374:5 (Q. I want to know if any other

10   nurses told you about any errors on their pay statements… A. No, no.) ("I don't

11   know what –what other nurses did.")   The glaring lack of evidence as to *any*

12   potential opt-in, demonstrates that an FLSA class should not be certified.

13   "Plaintiffs provide no real evidence, beyond their own speculative beliefs,

14   suggesting that all [opt-ins] regardless of location or experience… are required to

15   work in the same manner."   *Trinh*, 2008 WL 1860161, at *4.   *See also Eddings v.*

16   *Health Net Inc.,* Case No. CV 10–1744–JST (RZx), Dkt No. 109, Feb. 23, 2011

17   Order Granting in Part and Denying in Part Motion to Certify Class (denying FLSA

18   certification of off-the-clock claims where plaintiff offered no declarations or other

19   evidence of putative class members attesting to off-the-clock claims).   Thus, even

20   applying the most lenient standard, Plaintiffs fail to show that they are similarly-

21   situated to any other nurses and conditional certification should be denied.   *See*

22   *Colson,* 687 F. Supp. at 928-29 (no evidence of class-wide FLSA violations where

23   declarants lacked personal knowledge of events outside of their own offices).

### 3.    Plaintiffs Fail to Identify Common Evidence

25   Finally, Plaintiffs fail to identify any common evidence from which the Court

26   could discern that a common scheme or practice existed.   Again, Plaintiffs rely

27   solely on the testimony that Maxim has a nationwide payroll system.   However,

28   their claims are not based on any violations caused by that system, but rather arise

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

from individualized issues involving their local offices and specific recruiters they interacted with.  Piazza's declaration indeed confirms that any pay issues were handled at the local level, not on a nationwide or statewide basis.   Piazza Decl. ¶4c. *See Hinojos v. Home Depot, Inc.,* 2006 WL 3712944 (D.Nev. 2006) (denying certification of a nationwide FLSA class alleging unpaid overtime because "plaintiffs do not point to a common policy or practice on a nationwide, or even statewide, basis" and there was "the need for individualized determinations to resolve the claims of each plaintiff.")

### D.   The Court Should Deny Class Certification

#### 1.   The Requirements For Class Certification Are Demanding

The Nurse Plaintiffs bear the heavy burden *to prove* that each element of Rule 23 is established.  *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir. 2001).  Failure to prove any one of Rule 23's requirements destroys the alleged class action.  *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir.1975).  Proof must be based upon evidence.  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to provide that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Dukes,* 131 S. Ct. at 2551(citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-611 (1982)).  "Actual, not presumed conformance … remains indispensable."  *Dukes,* 131 S. Ct. 2541, 2552 (citations omitted).  District Courts must perform a "*rigorous analysis*" to ensure the Rule 23 requirements satisfied." *Id.*  (emphasis added); *see also Zinser*, 253 F.3d at 1186.  In the present case, the requisite "rigorous analysis" of the evidence makes clear that Plaintiffs have failed to meet their burden of proving each element under Rule 23 has been satisfied.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18                          Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

**E.    Plaintiffs Cannot Satisfy The Requirements Of Rule 23(a)**

**1.    Plaintiffs Cannot Establish The Commonality Requirement**[9]

In *Dukes,* the Supreme Court stated:  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  131 S. Ct. at 2551 (citing *Falcon*, 457 U.S. at 157).  "*Quite obviously, the mere claim by employees of the same company that they have suffered [an injury] ... gives no cause to believe that all their claims can productively be litigated at once." Id.* (emphasis added).

Here Plaintiffs have done exactly what the Court in *Dukes* said they must <u>not</u> do – rest on mere individual "claims" that they have suffered injury.  Plaintiffs literally present no argument or evidence in their Motion other than their suggested list of common questions.  Mtn 15:2-12.  Plaintiffs do not address the *Dukes* commonality standard, much less demonstrate how its requirement has been met.

Even if Plaintiffs had properly addressed the Rule 23(a) commonality requirement, the evidence they have filed does not demonstrate common issues capable of classwide resolution.  In *Bishop v. Petro Chemical Transport LLC*, 582 F. Supp. 2d 1290, 1307 (E.D. Cal. 2008) the Court held that evidence of one employee's overtime violations did not amount to proof of commonality.  "There is no evidence before the Court that there is a companywide policy to deny, *improperly*, overtime to those who are entitled to overtime compensation. *The evidence does not suggest anything other than an isolated instance as to plaintiff*...." (emphasis added).  *See Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 682-83 (S.D.Cal.1999) (commonality not met where plaintiff alleged only "broad outlines" of illegal and improper conduct by the defendant).

Here, the Plaintiffs do not demonstrate commonality even amongst themselves, let alone a class of thousands.  As discussed above, the evidence

---

[9] Rule 23(a)(1)'s numerosity requirements are not even met because Plaintiffs have not identified anyone else who allegedly suffered any overtime violations.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1   Plaintiffs submitted shows, at best, a handful of isolated pay issues (which Maxim

2   denies), that are not even common from one Plaintiff to another.  The complete lack

3   of evidence of a common, illegal policy defeats Plaintiffs' certification claims.

### 2.   Plaintiffs Fail To Establish Typicality

5   Plaintiffs must prove they are "part of the class and 'possess the same interest

6   and suffer[ed] the same injury' as the class members."  *Falcon*, 457 U.S.147 at 156.

7   Plaintiffs also must prove their "claims do not differ significantly from the claims

8   or defenses of the class as whole."  *Jimenez v. Domino's Pizza, Inc*., 238 F.R.D.

9   241, 248 (C.D. Cal. 2006) (citations and quotation marks omitted).

10   Plaintiffs did not submit *any* putative class member declarations in support of

11   Rule 23 certification.  *They did not even submit their own declarations.*  There is no

12   evidence to indicate that others suffered the individualized injuries they allege.  *See*

13   *Eddings,* CV 10–1744–JST (RZx), Dkt No. 109, p. 6 (evidence "does not show that

14   Plaintiffs' claims are typical of the class … because the Court has nothing to which

15   to compare it, namely the purported injuries of other class members.")  Plaintiffs

16   cannot even prove that amongst themselves they suffered the same injuries.

17   Accordingly, Plaintiffs cannot establish the typicality requirement.  *See Sarviss*,

18   663 F.Supp.2d at 909-10 (declarations from plaintiff, plaintiff's counsel, and a

19   consultant were "simply insufficient" to meet the typicality requirement);

20   *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 637 (N.D. Cal. 2010) (showing

21   of typicality was inconclusive where the plaintiff submitted his own declaration and

22   declarations from six other employees).

### 3.   Plaintiffs' Counsel are Inadequate Representatives

24   Plaintiffs have not satisfied Rule 23(a)(4), which requires that the proposed

25   class representatives and their class counsel adequately and fairly represent the

26   interests of the class.  *Falcon*, 457 U.S. at 157, fn. 13.

27   Plaintiffs request that Mark Thierman be appointed class counsel.  However,

28   to the best of Maxim's knowledge, Mr. Thierman has done little to no work on this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20                                          Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1  case.  Maxim's counsel has communicated throughout the case with counsel

2  Jennifer Hart.  Nakabayashi Decl. ¶¶4-6.  Mr. Thierman has not appeared at any

3  hearings or attended any depositions.  *Id.*  He did not appear at the parties' case

4  management conferences despite Local Rules requiring lead counsel to be present.

5  *Id.*  Plaintiffs have consistently been represented in these matters by Ms. Hart.  *Id.*

6  In fact, Plaintiffs themselves testified they have never met Mr. Thierman or heard

7  of his law firm.  Peters Depo. 80:10-81:10; Stewart Depo. 68:24-69:10.

8        Ms. Hart, however, has not submitted any evidence of her own qualification

9  to act as class counsel.  Ms. Hart's failure to attest to her qualifications is a tacit

10  admission that she is not an experienced class counsel.  *See Cullen v. New York*

11  *State Civil Service Commission,* 566 F.2d 846, 848-49 (2d Cir. 1977) (affirming

12  rejection of proposed class counsel who lacked experience in pertinent field).

13  Further, with respect to the Recruiter claims, neither Ms. Hart nor Mr. Thierman

14  has done any independent work on certification issues.  The Motion for Class

15  Certification as to the Recruiters relies <u>entirely</u> on arguments made and *evidence*

16  *submitted* by counsel in the *Ruiz-Stupi* action.  Piazza's declaration is an almost

17  verbatim copy, down to the formatting, of Ruiz-Stupi's declaration.  Such piggy-

18  backing on the work of Ruiz-Stupi's counsel clearly demonstrates that neither Ms.

19  Hart nor Mr. Thierman should be appointed counsel for any Recruiter class.

20        Additionally, antagonism or conflict among class members may defeat

21  adequacy of representation.  *Amchem Products, Inc. v. Windsor*, 521 US 591, 626,

22  117 S.Ct. 2231, 2251 (1997); *Hesse v. Sprint Corp.* 598 F3d 581, 589 (9th Cir.

23  2010) (conflicts arising because class representative's claim not typical).

24        Here, Peters and Stewart both blame their pay issues <u>on the Recruiters in</u>

25  <u>their respective offices</u>.  Peters testified that her alleged claims were caused by a

26  recruiter in San Jose.  Peters Depo. 63:9-11; 85:3-4; 106:25-107:3.  Stewart

27  identified several Recruiters in Palm Desert whom she claims acted improperly.

28  Stewart Depo. 65:4-67:8; 262:3 -263:8.  Additionally, the Recruiter declarations

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21                                                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

from Piazza, Ruiz-Stupi and McPherson verify that if errors occurred as to a nurse's pay it was the *Recruiters* who shared responsibility for fixing the errors.  Piazza Decl. ¶4c; Ruiz-Stuip Decl.¶4c; McPherson Decl. ¶4c.  *See White v. Osmose, Inc.,* 204 F.Supp.2d 1309, 1314-15 (M.D. Ala. 2002) (proposed classes that included employees who were "potentially complicit in the alleged unlawful practice" created an "inherent conflict of interest between the two groups.")

**F.**     **Plaintiffs Cannot Satisfy The Requirements Of Rule 23(b)(3)**

**1.**     **Plaintiffs Cannot Establish The Predominance Requirement**

As the Ninth Circuit has explained, Rule 23(b)(3)'s predominance inquiry focuses on "the relationship between the common and individual issues" and tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *In re Wells Fargo Home Mortg. Overtime Pay Litig*., 571 F.3d 953, 957 (9th Cir. 2009) (citations omitted).  Certification must be denied if the court determines that "Plaintiffs' claims require a fact-intensive, individual analysis" in order to be resolved.  *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 947 (9th Cir. 2009).

**a.**     **Plaintiffs' Wage Claims Depends On Individual Issues**

Plaintiffs' Claims That Maxim Failed to Pay All Overtime Will Require Many Individualized Inquiries:  Maxim's written policies affirm the Company's commitment to comply with federal and California overtime laws.  Given this policy, Plaintiffs' contention (without supporting evidence) that on some occasions, a nurse's pay rate was improperly reduced or overtime was not properly calculated cannot be proven without hundreds of thousands of individualized inquiries.  As to each nurse, for each week, the inquiries would involve: (1) what pay rate was agreed to for each assignment; (2) whether a pay rate was changed, and if so, why; (3) whether assignments with different pay rates were worked; (4) whether and how much overtime was worked; (5) whether overtime was properly calculated and

1   paid; and (6) whether, if overtime was not properly paid in one week, an adjustment
2   was made in a subsequent week to correct the error.

3       <u>Plaintiffs' Claims That Maxim Made Improper Deductions Will Require</u>
4   <u>Many Individualized Inquiries:</u>  Maxim's written policies provide that only lawful
5   deductions will be made from employees' wages.  Plaintiffs fail to provide any
6   evidence that any systematic lump sum "adjustments" were made to their pay
7   statements to deduct overtime they allegedly earned.  In order to adjudicate this
8   claim, the Court would have to look at hundreds of thousands of pay statements to
9   determine for each individual employee per week: (1) if he or she worked overtime
10  in a week; (2) whether any adjustment was made to the employee's pay; (4) why
11  that adjustment was made; (5) whether the reason for the adjustment was to correct
12  a prior error; and (6) whether the totality of all adjustments resulted in any failure to
13  pay wages due to that employee.

14      As to all of these inquiries, potential witnesses would include not only all the
15  nurses, but also the particular nurse Recruiters at each local office, payroll clerks
16  (*see* Piazza Decl. ¶4c) and the Account Manager for the office.  Common issues
17  clearly do not predominate here.  *See Hadjavi v. CVS Pharmacy, Inc.,* 2011 WL
18  3240763 (denying motion for class certification where "[i]n order to establish
19  Defendants' liability, the Court would be forced to proceed store-by-store and
20  employee-by-employee to determine whether Defendants effectively violated
21  California labor laws.")

22          **b.    Each of Plaintiffs' Derivative Penalty Claims Also**
                    **Depend On Individual Issues**
23
24      Plaintiffs do not even attempt to demonstrate commonality or predominance
25  as to their penalty claims under Labor Code Sections 203 and 226.  Those claims
26  would also require highly individualized inquiries; including detailed inquiries into
27  each nurse's final pay (*see* Cal. Code Regs. Tit. 8, §13520), inquiries as to whether
28  any failure to pay was willful and whether each nurse suffered "injury as a result of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23                          Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

1   a knowing and an intentional failure by an employer to comply" with any

2   applicable wage statement requirements (*see* Labor Code §226(e)).  *See, e.g.,*

3   *Jasper v. C.R. England, Inc.*, 2009 WL 873360, at *6 (C.D. Cal. Mar. 30, 2009)

4   (denying certification because "how each class member was injured is likely to

5   require individualized proof").

6           **2.     Plaintiffs Cannot Establish Superiority Or Manageability**

7           In evaluating class certification, the Court must consider "how a trial on the

8   merits would be conducted."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th

9   Cir. 1996).  Where "individual rather than common issues predominate, the

10  economy and efficiency of class action treatment are lost…."  *Zinser v. Accufix*

11  *Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2000) (citations omitted).  A

12  class action here would be unmanageable as it would require literally thousands

13  mini-trials; a finding regarding one nurse's wage claims would not be determinative

14  as to any other putative class member.  Further, the party seeking class certification

15  bears the burden of demonstrating "a suitable and realistic plan for trial of the class

16  claims."  *Zinser*, 253 F.3d at 1198.  That trial plan cannot involve procedural tools

17  that deprive a defendant of its right to assert its defenses as to each class member.

18  *Dukes,* 131 S.Ct. at 2561.  Here, Plaintiffs do not even attempt to set forth <u>any</u> trial

19  plan, much less "a suitable and realistic" one.

20          Finally, although the Court should also deny Plaintiffs' Motion for

21  Conditional Certification for the reasons explained above, the presence of their

22  FLSA claim provides an independent reason why Plaintiffs cannot establish

23  superiority: the FLSA opt-in action would be the superior method for adjudication.

24  In *Edwards v. City of Long Beach,* 467 F.Supp.2d 986, 992 (C.D. Cal. 2006), the

25  court, in denying the plaintiffs' motion for Rule 23 class certification, found that a

26  Section 216(b) collective action was superior for two reasons.  First, a collective

27  action "allows individuals to control their participation in the litigation in a far more

28  expeditious fashion that does a Rule 23 class action."  *Id.* at 992; *Leuthold v.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24                                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION

*Destination America, Inc.,* 224 F.R.D 462, 469-70 (N.D. Cal. 2004) (declining to certify Rule 23 class where opt-in FLSA action is a superior method to adjudicate state law claims).  Specifically, in a Rule 23 class action, the putative class members must take affirmative steps to "opt-out" in order to avoid being bound by the judgment, as opposed to a Section 216(b) collective action where the putative class members must affirmatively "opt-in."  Also, if 'only a few plaintiffs opt-in to the FLSA class after the court were to certify a Rule 23 state law class, the court might be faced with the somewhat peculiar situation of a large number of plaintiffs in the state law class who have chosen not to prosecute their federal claims.'"

*Edwards,* 467 F. Supp.2d at 992 (citations omitted).

IV.   **CONCLUSION**

For all these reasons, Plaintiffs' Motion for Conditional and Class Certification should be denied.

Dated:       June 4, 2012                    MORGAN, LEWIS & BOCKIUS LLP

By /s/ *Rebecca D. Eisen*
Rebecca D. Eisen
Attorneys for Defendant

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25                    Case No. 2:11-CV-08414-JST-JEM
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL AND CLASS CERTIFICATION