1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   Barbara Buckland, et al.,              CASE NO. CV 11-8414-JST (JEMx)

12          Plaintiffs,                     **ORDER (1) DENYING PLAINTIFFS'**
                                            **MOTION FOR CLASS**
13                                          **CERTIFICATION (Doc. 67), and (2)**
          vs.                               **DENYING AS MOOT DEFENDANT'S**
14                                          **REQUEST TO FILE A SUR-REPLY**
15   Maxim Healthcare Services, Inc.,       **(Docs. 80, 82)**

16          Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

1

Before the Court is a Motion for Conditional and Class Certification ("Motion"), filed by Plaintiffs Barbara Buckland ("Buckland"), Anna Marie Stewart ("Stewart"), Carmen Peters ("Peters"), and Brian Piazza ("Piazza") (collectively, "Plaintiffs"), individually and on behalf of others similarly situated.  (Mot., Doc. 67.)  Defendant Maxim Healthcare Services, Inc. ("Defendant") filed an Opposition (Opp'n, Doc. 68), and Plaintiffs replied (Reply, Doc. 73.)  Having read and considered the papers, and heard oral argument, the Court DENIES Plaintiffs' Motion.  In light of this denial, the Court also DENIES as moot Defendant's ex parte application for leave to file a sur-reply.  (Docs. 80, 82.)

## I.      Background

### a.  Procedural Background

Buckland, Peters, and Stewart (collectively, "Nurse Plaintiffs") were employed by Defendant as licensed vocational nurses ("LVNs" or "LPNs") and/or travel nurses (collectively, "Nurses") on a non-salaried basis.  (First Am. Compl. ("FAC") ¶ 1, Doc. 7.)  Nurse Plaintiffs filed this action on September 7, 2010, asserting claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and California law; and numerous additional claims under California law, including failure to pay minimum wage, unlawful deductions from wages, failure to provide meal periods, failure to provide rest periods, failure to reimburse business expenses, failure to timely pay wages due at termination, failure to provide accurate wage statements, unlawful business practices in violation of the UCL, and civil penalties pursuant to the California Private Attorneys General Act of 2004, California Labor Code §§ 2699, et seq. ("PAGA").  Nurse Plaintiffs requested damages, injunctive relief, and restitution.  (Notice of Removal, Ex. C, Doc. 1.)

On December 3, 2010, Plaintiffs filed an amended complaint, adding Piazza ("Recruiter Plaintiff") as a Plaintiff.  Defendant formerly employed Piazza as a recruiter ("Recruiter") at Defendant's San Diego location on a salaried basis.  (FAC ¶ 5.)  In

addition to asserting the same claims and seeking the same remedies as the original Complaint on behalf of the Nurse Plaintiffs, the FAC asserts all of the same claims—except for the claim for overtime under FLSA, the claim for failure to pay minimum wage, and the claim for unlawful deductions from wages—on behalf of the Recruiter Plaintiff, and seeks the same remedies.

On May 25, 2012, Plaintiff filed this Motion, seeking conditional certification of an FLSA collective action ("the FLSA Nurse Collective Action") defined as:

> All persons currently or formerly employed by Defendant in the United States having the job title of "Licensed Vocational Nurse," "Licensed Practical Nurse," "Travel Nurse," or equivalent position within three (3) years preceding the filing of the complaint in this action and who file their consents to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

(Mot. at 1.)  Plaintiffs also seek certification of a class of California Nurses ("the Nurse Class") and of California Recruiters ("the Recruiter Class"), defined as follows:

> Nurse Class:  All persons currently or formerly employed by Defendant in California having the job title of "Licensed Vocational Nurse," "Licensed Practical Nurse," "Travel Nurse," or equivalent position within four (4) years preceding the filing of the complaint in this action until the entry of judgment after trial.

1           Recruiter Class:  All persons currently or formerly employed

2           by Defendant in California having the job title of "Recruiter"

3           or equivalent position within four (4) years preceding the filing

4           of the complaint in this action until the entry of judgment after

5           trial.

6

7   (Id.)[1]

8

9           **b.  *The Ruiz Stupi Action***

10      On April 5, 2010—before this action was filed—Benjamin Matthew Ruiz Stupi

11  filed a complaint in the Orange County Superior Court("the Ruiz Stupi action"), asserting

12  claims for violations of the California Labor Code and violation of Business & Professions

13  Code §§ 17200, et seq. ("UCL").  *Ruiz Stupi, et al. v. Maxim Healthcare Services, Inc.*,

14  8:10-cv-1456-JST-JEM.  After the action was removed to this Court on September 27,

15  2010, the parties fully briefed a motion for class certification.  (*Id.*)

16      On May 17, 2012, before the Court ruled on Plaintiffs' motion for class

17  certification, the Court transferred the Ruiz Stupi action to the Southern District of Texas

18  to facilitate a consolidated settlement of the Ruiz Stupi action and two other actions against

19  Defendant.

20      On July 19, 2012, the Honorable Stephen W. Smith of the Southern District of

21  Texas granted preliminary approval of the class settlement in the case with which the Ruiz

22  Stupi action was consolidated, *Ene v. Maxim Healthcare Services, Inc.* ("the Ene action"),

23  and conditionally certified a Rule 23 class of "[a]ll persons who were or are employed by

24  Maxim as a salaried Recruiter in California at any time from April 5, 2006 through the

25

26  _____

27     [1] As discussed below, Plaintiffs do not specify which claims they seek to certify.

28

1 date of the Order Granting Preliminary Approval," among other classes.  4:09-CV-02453,

2 Doc. 169 (S.D. Tex. July 19, 2012).

3

4 **II.     Legal Standard**

5         ***a. Class Certification***

6      "To obtain class certification, a class plaintiff has the burden of showing that the

7 requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule

8 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  "Rule

9 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose

10 claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550

11 (2011).  Under Rule 23(a), the party seeking certification must demonstrate:

12

13          (1) the class is so numerous that joinder of all members is

14          impracticable;

15          (2) there are questions of law or fact common to the class;

16          (3) the claims or defenses of the representative parties are

17          typical of the claims or defenses of the class; and

18          (4) the representative parties will fairly and adequately

19          protect the interests of the class.

20

21 Fed. R. Civ. P. 23(a).  "Second, the proposed class must satisfy at least one of the three

22 requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548.  Rule 23(b) is satisfied if:

23

24          (1) prosecuting separate actions by or against individual class

25          members would create a risk of:

26             (A) inconsistent or varying adjudications with respect to

27             individual class members that would establish

28

1  incompatible standards of conduct for the party opposing

2  the class; or

3  (B) adjudications with respect to individual class members

4  that, as a practical matter, would be dispositive of the

5  interests of the other members not parties to the individual

6  adjudications or would substantially impair or impede

7  their ability to protect their interests;

8  (2) the party opposing the class has acted or refused to act on

9  grounds that apply generally to the class, so that final

10  injunctive relief or corresponding declaratory relief is

11  appropriate respecting the class as a whole; or

12  (3) the court finds that the questions of law or fact common to

13  class members predominate over any questions affecting only

14  individual members, and that a class action is superior to

15  other available methods for fairly and efficiently adjudicating

16  the controversy.

17

18  Fed. R. Civ. P. 23(b).

19  "Rule 23 does not set forth a mere pleading standard. A party seeking class

20  certification must affirmatively demonstrate his compliance with the Rule—that is, he

21  must be prepared to prove that there are *in fact* sufficiently numerous parties, common

22  questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. This requires a district court to

23  conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of

24  the plaintiff's underlying claim." *Id.*

25

26

27

28

1

       **b.  *FLSA Collective Action***

2

      Under Section 216(b), one or more employees may bring an FLSA claim in a

3 representative capacity for "other employees similarly situated."  29 U.S.C. § 216(b). "No

4 employee shall be a party plaintiff to any such action unless he gives his consent in writing

5 to become such a party and such consent is filed in the court in which such action is

6 brought." *Id.*  Thus, to certify a collective action under the FLSA, a district court must

7 determine whether plaintiffs are similarly situated to each other.  *Wynn v. Nat'l Broad.*

8 *Co.*, 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002).

9

      Neither the FLSA nor the Ninth Circuit have defined "similarly situated." *Adams v.*

10 *Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007).  District courts have taken

11 three different approaches in interpreting the term for purposes for section 216(b): "(1) a

12 two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of

13 the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements

14 of the pre-1966 version of Rule 23 for 'spurious' class actions." *Id.* (quoting *Romero v.*

15 *Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 481 (E.D. Cal. 2006)).  The majority of

16 courts, including three circuit courts, have adopted the two-tiered approach.  *Id.; see, e.g.*,

17 *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001); *Hipp v.*

18 *Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Mooney v. Aramco Serv.*

19 *Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995); *Wynn*, 234 F. Supp. 2d at 1082.  Likewise, this

20 Court will use the two-tiered approach.

21

      The two-tiered approach consists of the following:

22

23

                 [T]he court must first decide, based primarily on the

24                  pleadings and any affidavits submitted by the parties, whether

25                  the potential class should be given notice of the action.

26                  Because the court generally has a limited amount of evidence

27                  before it, the initial determination is usually made under a

28

1                       fairly lenient standard and typically results in conditional

2                       class certification.

3

4                       Once discovery is complete and the case is ready to be tried,

5                       the party opposing class certification may move to decertify

6                       the class.  The court then must make a factual determination

7                       regarding the propriety and scope of the class and must

8                       consider the following factors: (1) the disparate factual and

9                       employment settings of the individual plaintiffs; (2) the

10                       various defenses available to the defendants with respect to

11                       the individual plaintiffs; and (3) fairness and procedural

12                       considerations.  Should the court determine on the basis of the

13                       complete factual record that the plaintiffs are not similarly

14                       situated, then the court may decertify the class and dismiss

15                       the opt-in plaintiffs without prejudice.

16

17 *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (internal citations

18 omitted).

19

20    **III.**    **Discussion**

21       Because the Court concludes that Plaintiffs fail to meet the commonality and

22 adequacy requirements with respect to the Nurse Class, the Court addresses only these two

23 requirements.  Furthermore, because there is significant overlap between the commonality

24 requirement under Rule 23 and certification of an FLSA collective action, the Court

25 discusses certification of the FLSE Nurse Collective Action jointly with commonality.

26 Finally, the Court declines to engage in a full Rule 23 analysis of the Recruiter Class in

27

28

1    light of the preliminary settlement approval, but nonetheless denies certification on

2    adequacy grounds, as discussed with respect to the Nurse Class.

3

4             ***a.   Analysis of Rule 23 Commonality (Nurse Class) and FLSA's "Similarly***

5                  ***Situated" Requirement***

6        Under Rule 23, "[t]o show commonality, Plaintiffs must demonstrate that there are

7    questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*,

8    657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)). "Where the

9    circumstances of each particular class member vary but retain a common core of factual or

10   legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney*

11   *Mickell*, --- F.3d ----, 2012 WL 3104620, at *9 (9th Cir. Aug. 1, 2012) (citation and

12   internal quotation marks omitted). Additionally, "[c]ommonality requires the [P]laintiff[s]

13   to demonstrate the class members have suffered the same injury." *Dukes*, 131 S.Ct. at

14   2551 (internal citations and quotation marks omitted). "What matters to class certification

15   . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a

16   classwide proceeding to generate common *answers* apt to drive the resolution of the

17   litigation." *Id.* (citation and internal quotation marks omitted).

18        Here, Plaintiffs struggle even to frame common questions for the Nurses' claims.

19   For example, one of the "common questions" Plaintiffs assert in their moving papers is

20   "whether [Defendant's] centralized payroll system underpaid overtime wages by failing to

21   properly calculate the total hours worked per day and per week for nurses who serviced

22   more than one client during a workday or workweek." (Mot. at 15.) However, the only

23   evidence Plaintiffs proffer in support of this purportedly uniform practice is Peters' wage

24   statements. (*Id.* at 4.) As Plaintiffs' counsel ("Counsel") conceded at oral argument, these

25   wage statements do not provide any information about the mechanism by which any

26   underpayment occurred, let alone whether that mechanism derived from a uniform policy

27   or practice. Furthermore, after Defendant submitted a declaration in opposition to the

28

1  Motion explaining that Defendant's national "payroll department reviews reports regarding

2  each day worked by an external California employee to audit and double check whether

3  the employee was properly paid all daily and weekly overtime owed," and explaining that

4  Peters' wage statements were correct, except for one occasion, for which she was paid an

5  adjustment (Redding Decl. ¶¶ 6, 8, Doc. 68-5), Plaintiffs completely reframed the common

6  questions in their Reply (*compare* Mot. at 15 *with* Reply at 7), and apparently abandoned

7  any argument based on a "policy" of not paying correct overtime when a Nurse services

8  more than one client in a workday or workweek (Reply at 7.)

9         As best as the Court can tell, the essence of Plaintiffs' argument with respect to

10  commonality is summarized in Counsel's statement at oral argument that "whatever

11  system they are using isn't working."  Not only are Plaintiffs unable to identify any

12  common policy or practice, they assume that the system, whatever it may be, has caused

13  others the same injury.  There is simply no evidence to support this assumption.

14  Accordingly, the Court concludes that Plaintiffs have failed to show commonality with

15  respect to the Nurses' claims.

16         In FLSA collective actions, district courts have held that conditional certification at

17  this stage of litigation requires only that "plaintiffs make substantial allegations that the

18  putative class members were subject to a single illegal policy, plan or decision." *Adams*,

19  242 F.R.D. at 536 (quoting *Leuthold*, 224 F.R.D. at 468).  However, "[w]hile the standard

20  for conditional approval at the [first-tier] stage of litigation is lenient, it does require some

21  evidentiary support.  The lack of any evidence of similarity or even other potential class

22  members precludes class certification." *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F.

23  Supp. 2d 883, 903 (C.D. Cal. 2009) (citation and internal quotation marks omitted).  Here,

24  as discussed above, the evidence Counsel submitted in support of this Motion is so lacking,

25  and the proffered theories so inconsistent, that the Court cannot determine that those

26  Nurses within the scope of the FLSA Nurse Collective Action were subject to a single

27

28

1 | illegal policy, plan or decision, or that there are others similarly situated to Nurse

2 | Plaintiffs.  Therefore, the Court will not conditionally certify an FLSA collective action.

3 |

4 |        **b.  *Adequacy of Counsel***

5 |      "In assessing whether class representatives and their counsel will vigorously

6 | prosecute a class action litigation, courts may consider the actual progress of the

7 | proceedings to that point."  *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal.

8 | 2010).  Based on the actual progress of this case, the Court concludes that Counsel will not

9 | adequately represent the class.  Counsel continue to prosecute claims on behalf of a

10 | deceased class representative, fail to present any modicum of evidence of Defendant's

11 | policies and practices related to the Nurses' Class, rely entirely on recycled evidence from

12 | the Ruiz Stupi action in support of the Recruiters Class, and have failed to comply with the

13 | Local Rules and this Court's Orders.

14 |

15 |         i.  <u>Prosecuting the Claims of a Deceased Class Representative</u>

16 |      Counsel's persistence in prosecuting this case in Buckland's name, despite the fact

17 | that she has been deceased since August 24, 2011, puzzles the Court.  On May 17, 2012,

18 | Counsel filed an ex parte application to extend the class certification deadline, in part

19 | because "Plaintiff discovered on December 1, 2011, that Barbara Buckland had passed

20 | away.  Buckland was the lead class representative with respect to the claims based on the

21 | Defendant's reduction in nurses' hourly rates of pay to avoid paying overtime premiums."

22 | (Doc. 62, ¶ 2.)  While Counsel apparently recognized that Buckland could not serve as a

23 | class representative, Counsel failed to replace Buckland, despite having over six months

24 | between Buckland's death and the deadline for filing this motion for class certification.

25 | Instead, Plaintiffs filed this Motion, requesting that the Court appoint Buckland as a class

26 | representative anyway, without further acknowledging her death or its impact on her

27 | ability to adequately represent the class.  In fact, Plaintiffs inexplicably complain that

28 |

1  Defendant has failed to produce Buckland's payroll records, earning statements, W-2

2  forms, and personnel file.  (Reply at 3.)  While Counsel stated at oral argument that

3  Plaintiffs were not asking the Court to appoint Buckland as a class representative, this is

4  belied by Plaintiffs' Proposed Order, which lists Buckland as such (Proposed Order, Doc.

5  67-6).  Moreover, Counsel have made no attempts to withdraw Buckland's claims.  This

6  demonstrates Counsel's inadequacy.

7

8              ii.  Briefing and Evidence in Support of this Motion

9          The Court is troubled by Counsel's failure to obtain (1) any discovery related to

10  Defendant's policies and practices regarding the Nurses' claims, or (2) any original

11  evidence in support of the Recruiters' claims.  Of the fifteen exhibits submitted in support

12  of Plaintiffs' Motion, five are documents filed by other counsel in the Ruiz Stupi action,

13  three are orders granting class certification in other actions against Defendant, one is a

14  screenshot of Defendant's webpage, one is the operative complaint in this action, and one

15  is a declaration by Piazza that appears to be virtually identical to those declarations filed

16  by the proposed class representatives in the Ruiz Stupi action.  (*Compare* Piazza Decl.,

17  Doc. 67-4 *with* Ruiz Stupi Decl., Doc. 67-4.)[2]  Thus, Counsel not only copied the theory of

18  the Ruiz Stupi action, but rely entirely on the evidence in the Ruiz Stupi action.  Based on

19  this cookie-cutter approach to litigation, the Court lacks confidence that Counsel are

20  capable of prosecuting the case on behalf of the Recruiters or the Nurses.

21          The remaining evidence submitted in support of Plaintiffs' Motion goes entirely to

22  the Nurses' claims, and consists only of excerpts of and exhibits to Stewart's deposition,

23  exhibits to Peters' deposition, Buckland's pay statements, and an email from Buckland to

24  an HR representative regarding unpaid overtime and deductions.  Notably absent are

25

26  _____

27      [2] The Ruiz Stupid declaration was also submitted in support of this motion for class
   certification.

28

1   declarations by any of the Nurse Plaintiffs.  The significant holes in the evidence suggest

2   that Counsel are inadequate to prosecute the Nurses' claims.

3          First, Counsel failed to indicate in its moving papers that Plaintiffs seek certification

4   on only some of their claims, and fail to discuss certification on a claim-by-claim basis in

5   the Motion.  Furthermore, Counsel has failed to withdraw Plaintiffs' request for injunctive

6   relief, which they must because all of the proposed class representatives are former

7   employees, who have no standing to seek such relief.  *Ellis v. Costco Wholesale Corp.*, 657

8   F. 3d 970, 986 (9th Cir. 2011).

9          Counsel's other major error—which infects Plaintiffs' entire Motion—is providing

10  evidence only of specific instances to establish that Defendant has a particular policy or

11  practice.  The only evidence of Defendant's policies is declarations by Defendant's

12  representatives in support of the *Opposition* to Plaintiffs' Motion.  In fact, Counsel stated

13  at oral argument that Plaintiffs were relying entirely on the Redding declaration—evidence

14  that Counsel did not even know about until Defendant filed its Opposition—as evidence of

15  the existence of common policies.

16         As discussed above, Plaintiffs fail to commit to common questions driving this

17  litigation.  At this stage of litigation, the Court has to assume that this is at least in part due

18  to Counsel's inadequacy in prosecuting this case.  While Plaintiffs' counsel, Mark

19  Thierman, states in his declaration that "[t]he employer's records[,] like job descriptions,

20  work billings and reimbursement requests[,] and scheduling documents are usually far

21  more significant in wage [and] hour cases than live testimony," Plaintiffs do not submit

22  any of this type of evidence in support of the Nurses' claims.  (Thierman Reply Decl. ¶ 20,

23  Doc. 76.)  In their Reply, Plaintiffs complain that "Defendant has . . . completely

24  stonewalled Plaintiffs' discovery attempts.  With the exception of those documents chosen

25  by Defendant for use in deposing plaintiffs Peters and Stewart and their personnel files,

26  Defendant has refused to produce a single document in response to Plaintiffs' requests for

27  production . . . ."  (Reply at 2.)  Although intended as an excuse for Plaintiffs' lack of

28

evidence, or alternatively, as a request for the Court to compel Defendant to comply with Plaintiffs' discovery requests (*id.* at 3), Counsel's failure to file a motion to compel under these circumstances further demonstrates Counsel's inability to protect the rights and interests of absent class members.  Based on the briefing and lack of evidence submitted in support of this Motion, it does not appear that Counsel have vigorously prosecuted this action.  Counsel have failed to take any depositions or file any motion to compel to obtain necessary discovery.  While this inaction has undoubtedly prejudiced absent class members, *see Kandel*, 264 F.R.D. at 635, the Court cannot determine the extent of the prejudice because the Court does not know what evidence would exist had Counsel conducted appropriate discovery.

Finally, the Court notes that Counsel have failed to comply with the Local Rules.  Specifically, Counsel failed to submit mandatory chambers copies, in accordance with Local Rule 5-4.5.  Even after this Court issued two orders requiring Counsel to submit mandatory chambers copies, Counsel failed to submit all mandatory chambers copies of all documents related to this Motion.

Accordingly, the Court concludes that Counsel will not adequately represent the Nurse Class.  The Court DENIES certification of the Nurse Class because Plaintiffs fail to meet the commonality and adequacy requirements.

### c.  Rule 23 Certification (Recruiter Class)

In light of the preliminary approval of class settlement in the Ene action, the Court declines to engage in a Rule 23 analysis of the Recruiter Class.  However, because the Court concludes that Counsel are inadequate, the Court DENIES Plaintiffs' Motion with respect to the Recruiter Class.

1

**IV.** **Conclusion**

2

For the foregoing reasons, the Court DENIES Plaintiffs' Motion.

3

4

DATED: <u>August 27, 2012</u>

5

6

7                                  <u>**JOSEPHINE STATON TUCKER**</u>
                                      JOSEPHINE STATON TUCKER
8                                  UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28